THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PAYAM MOBIN, )
    Plaintiff, )
)
v. ) Civil Action No. 1:08cv1119
)
SARAH TAYLOR, et al., )
    Defendants. )

## MEMORANDUM OPINION

This action for *de novo* review of the denial of an application for naturalization presents the question whether an alien's felony perjury conviction under California law qualifies as an aggravated felony under 8 U.S.C. §§ 1101(f)(8), thereby rendering the alien ineligible for naturalization for lack of "good moral character" pursuant to 8 U.S.C. § 1427(a)(3). Specifically at issue are the parties' cross-motions for summary judgment, pursuant to Rule 56, Fed. R. Civ. P., which motions have been fully briefed and argued and are now ripe for disposition. For the reasons that follow, defendants' motion for summary judgment must be granted and plaintiff's cross-motion must be denied.

I.

The pertinent facts are undisputed. On March 24, 1997, plaintiff Payam Mobin — a citizen of Iran and resident of Reston, Virginia — pled guilty in a California state court to one count of felony perjury for making false statements under penalty of perjury in an application for a Smog Check Mechanic License. He was thereafter sentenced to two years of imprisonment on this offense.

On April 21, 1998, the Immigration and Naturalization Service (INS) initiated removal proceedings against Mobin, specifically charging that he was removable pursuant to 8 U.S.C. §

1

1227(a)(2)(A)(iii)[1] because his state perjury conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(S).[2] On January 29, 1999, the assigned Immigration Judge (IJ) terminated the removal proceedings against Mobin, concluding that his state conviction did not fall within the scope of § 1101(a)(43)(S) because the charged perjury offense did not occur in connection with a judicial proceeding. The INS thereafter appealed the IJ's decision to the Board of Immigration Appeals (BIA) on February 10, 1999. Nearly four years later, on January 23, 2003, the BIA affirmed the IJ's decision to terminate Mobin's removal proceedings, but did so on grounds different from those relied on by the IJ. Specifically, the BIA, like the IJ, ruled that Mobin's state perjury conviction did not constitute an aggravated felony for removal purposes, but it did so, not on the ground that the offense did not occur in a judicial proceedings, but because the underlying statute of conviction — California Health and Safety Code (HSC) § 44059 — does not share material elements in common with 18 U.S.C. § 1621, the federal perjury statute.

On April 14, 2005 — several years after the termination of his removal proceedings — Mobin filed an application for naturalization with the Bureau of Citizenship and Immigration Services (BCIS).[3] BCIS eventually interviewed Mobin in connection with his application on January

---

[1] This section provides, in pertinent part, that "any alien...in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien...is convicted of an aggravated felony at any time after admission...." 8 U.S.C. § 1227(a)(2)(A)(iii).

[2] Section 1101(a)(43) defines the term "aggravated felony" as including, *inter alia*, "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S).

[3] As of March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice and its functions related to the adjudication of aliens' applications for immigration benefits, including naturalization, were assumed by BCIS, within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135.

10, 2006. Thereafter, on September 25, 2007, BCIS denied Mobin's naturalization application on the ground that he could not establish "good moral character" as required by 8 U.S.C. § 1427(a)(3)[4] because his state perjury conviction constituted an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(S). On October 25, 2007, Mobin filed an administrative appeal with BCIS, which subsequently affirmed the denial of Mobin's naturalization application on June 27, 2008.

On October 24, 2008, Mobin *filed* the instant civil action seeking (i) declaratory relief pursuant to 28 U.S.C. § 2201 or, alternatively, (ii) *de novo* review of his naturalization application pursuant to 8 U.S.C. § 1421(c). Mobin's primary argument in support of both alternative claims is that BCIS was statutorily bound by the BIA's earlier decision, namely that Mobin's state perjury conviction does not constitute an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(S). Because of this, Mobin first requests a judicial declaration pursuant to 28 U.S.C. § 2201 that the BCIS's denial of his application for naturalization was "arbitrary and capricious and contrary to law," and thus, that he is entitled to naturalization. Complaint, ¶¶ 2, 22. As an alternative to this claim for limited declaratory relief, Mobin requests a *de novo* hearing on his application for naturalization pursuant to 8 U.S.C. § 1421(c). In this regard, while acknowledging that *de novo* review is the appropriate standard, Mobin nonetheless argues that the BIA's decision in his removal proceedings — but not the BCIS's decision in his naturalization proceedings — should be afforded deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsil, Inc., et al.*, 467 U.S. 837 (1984). Now at issue are the parties' fully briefed and argued cross-motions for summary

---

[4] Section 1427(a)(3) provides, in pertinent part, that "[n]o person...shall be naturalized unless such applicant...has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a)(3).

3

judgment.

## II.

The summary judgment standard is well-settled. Thus, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.[5] It is equally clear that in ruling on a motion for summary judgment, the facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

These well-established principles, applied here, leave no doubt that this matter is appropriately disposed of by way of summary judgment; the parties' dispute here is one of law, not fact.

## III.

As a threshold matter, it is important to note that Mobin's request for limited declaratory relief, pursuant to 28 U.S.C. § 2201, is not appropriate in this instance, as the standard applicable to judicial review of the denial of a naturalization application is expressly governed by statute. In this regard, § 1421(c) provides that

> [a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person

---

[5] It is clear that the Federal Rules of Civil Procedure apply to judicial review of a denial of an application for naturalization. *See* Rule 81(a)(3), Fed. R. Civ. P. (providing that "[t]hese rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions").

resides... .

8 U.S.C. § 1421(c). Section 1421(c) goes on to provide that "[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).[6] Thus, the statute makes unmistakably clear that there is jurisdiction in the district court to review Mobin's naturalization claim and that the applicable standard of review is *de novo*. *See Chan v. Gantner*, 464 F.3d 289, 291-92 (2d Cir. 2006) (recognizing that "[t]he 1990 Amendments [to the Immigration and Nationality Act] also provided for *de novo* judicial review in the United States district courts of the CIS's denials of applications for naturalization") (citations omitted). And, significantly, "[t]his grant of authority is unusual in its scope — rarely does a district court review an agency decision de novo and make its own findings of fact." *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000).

Contrary to Mobin's contentions, *Chevron* deference — either to the earlier decision of the BIA or the subsequent decision of BCIS — is not warranted in the context of judicial review of the denial of an application for naturalization. This is so because the applicable statute — § 1421(c) — expressly provides for *de novo* judicial review, whereas judicial review in other immigration contexts, such as removal or asylum, is highly deferential and expressly limited by statute.[7] Indeed,

---

[6] Despite his preliminary request for declaratory relief, a review of the complaint makes clear that Mobin essentially concedes that *de novo* review of his application is required by statute. Indeed, his complaint itself is entitled "Complaint Under 8 U.S.C. § 1421(c) [Petition for De Novo Review of Denial of Application for Naturalization]."

[7] *See, e.g.*, 8 U.S.C. § 1252(b)(4) (providing that "the administrative findings of fact [in removal proceedings] are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary" and that "the Attorney General's discretionary judgment whether to grant [asylum] relief...shall be conclusive unless manifestly contrary to the law and an abuse of discretion"); *see also O'Sullivan v. United States Citizenship and Immigration Services*, 453 F.3d 809, 812 (7th Cir. 2006) (stating that "Congress specifically calls for de novo review in naturalization

5

the *de novo* review procedure applicable to the denial of a naturalization application, as involved here, "is in stark contrast to the appeal process for orders of deportation and petitions for asylum, in which federal courts accord the Attorney General great deference." *O'Sullivan*, 453 F.3d at 811; *see also United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (stating that "even if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions"); *Gorenyck v. U.S. Dep't of Homeland Security*, 2007 WL 3334340, at *3 (N.D. Ill. Nov. 8, 2007) (recognizing that in conducting a *de novo* review under § 1421(c), district courts make their "own findings of fact and conclusions of law and [the administrative agencies'] interpretations are not entitled to the high deference outlined in *Chevron*"). The denial of Mobin's naturalization application is thus subject to *de novo* review in this instance, without *Chevron* deference afforded to the administrative findings of either the BIA or the BCIS.

IV.

*De novo* review begins, of course, with an examination of the statutory requirements for naturalization. As pertinent here, 8 U.S.C. §1427(a)(3) expressly provides that "[n]o person...shall be naturalized unless such applicant...has been and still is a person of good moral character...." 8 U.S.C. § 1427(a)(3). In this regard, § 1101(f) provides that "[n]o person shall be regarded as, or found to be, a person of good moral character...who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)." 8 U.S.C. § 1101(f)(8). Section 1101(a)(43), in turn, defines the term "aggravated felony" as including, *inter alia*, "an offense

---

cases, while ordering great deference in other immigration contexts").

relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). Thus, an alien who has been convicted of an offense "relating to...perjury" and imprisoned for a period of at least one year for such an offense is unable to establish the "good moral character" required for naturalization under § 1427(a)(3).

Significantly, it is the alien's burden to establish that all of the statutory requirements of naturalization have been met. Indeed, as pertinent here, an alien seeking to obtain naturalization "bears the burden to show, by clear and convincing evidence, that he has good moral character." *El-Ali v. Carroll*, 83 F.3d 414 (Table), 1996 WL 192169, at *4 (4th Cir. 1996); *see also* 8 C.F.R. § 316.10(a)(1) (providing that "[a]n applicant for naturalization bears the burden of demonstrating that...he or she has been and continues to be a person of good moral character"). The Supreme Court has also recognized that any doubts in this regard "should be resolved in favor of the United States and against the claimant." *United States v. Macintosh*, 283 U.S. 605, 626 (1931). A review of the record makes clear that Mobin has failed to meet this heavy burden of establishing his eligibility for naturalization in this case.

As an initial matter, there is no doubt that Mobin's conviction for making false statements under penalty of perjury in an application for a Smog Check Mechanic License amounts to the crime of perjury under California state law. Specifically, the state statute under which Mobin was convicted — California HSC § 44059 — provides, in part, that

> [t]he willful making of any false statement or entry with regard to a material matter in any oath, affidavit, certificate of compliance or noncompliance, or application form which is required by this chapter...*constitutes perjury* and is punishable as provided in the Penal Code.

7

Cal. Health & Safety Code § 44059 (emphasis added). The state statute thus criminalizes willfully making a false statement regarding a material matter in an application form filed pursuant to the California HSC, which application is required to be certified "under penalty of perjury." *See, e.g.,* Application for Smog Check Technician License (Doc. 11, Ex. B).

But this does not end the analysis, for the question presented here is whether Mobin's state perjury conviction amounts to an "aggravated felony" under federal law — specifically within the meaning of 8 U.S.C. § 1101(a)(43)(S)[8] — thus rendering it a disqualifying aggravated felony for purposes of naturalization. In this regard, § 1101(a)(43)(S) expressly provides that the phrase "aggravated felony," as that phrase is used in § 1101(f)(8), includes "an offense *relating to...perjury or subornation of perjury... .*" 8 U.S.C. § 1101(a)(43)(S) (emphasis added). Contrary to Mobin's contentions, § 1101(a)(43)(S) does not, by its terms, limit its application to a particular class of perjury convictions, including specifically to those convictions involving false statements made under oath or under the penalty of perjury "in relation to a judicial or administrative tribunal." Pl. Reply (Doc. 25) at 8. Instead, the statute encompasses any offense "relating to" perjury or subornation of perjury, provided the offense results in a term of imprisonment of at least one year. *See* 8 U.S.C. § 1101(a)(43)(S). Put simply, Mobin's state felony conviction for making false statements in an application for a Smog Check Technician's License — which was itself defined as "perjury" in the applicable California statute — is clearly one "relating to" perjury sufficient to fall within the meaning of § 1101(a)(43)(S). This state conviction therefore falls squarely within the

---

[8] It is well settled under traditional rules of statutory construction that "the plain language of the statute in question is deemed the most reliable indicator of Congressional intent." *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005) (citing *INS v. Cardoza-Fonesca*, 480 U.S. 421, 446 (1987)).

8

definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(S) and renders Mobin ineligible for naturalization for lack of "good moral character" pursuant to 8 U.S.C. § 1427(a)(3).

This result is further confirmed by use of the "categorical approach" announced in *Taylor v. United States*, 495 U.S. 575, 598-600 (1990). Under this approach, it is necessary, first, to examine whether the statutory elements of perjury under California HSC § 44059 include the elements of an aggravated felony offense under subsection § 1101(a)(43)(S), "regardless of [the] exact definition or label" of the California crime. *See Soliman v. Gonzales*, 419 F.3d 276, 284 (4th Cir. 2005) (quoting *Taylor*, 495 U.S. at 599). If the statute of conviction may, but does not necessarily, include all the elements of "perjury" under § 1101(a)(43)(S), it then becomes necessary "to look to the indictment (or information) and similar documents for the state law offense, and assess whether the state court, in adjudging guilt, was required to find the elements of [perjury] required by federal law." *Soliman*, 419 F.3d at 284 (citing *Shepard v. United States*, 544 U.S. 113 (2005)). Here, however, there is no need to engage in the second step in the *Taylor* analysis, as a review of the applicable state statute makes clear that California HSC § 44059 is a "categorical" perjury statute; that is, its elements are essentially the same as the elements of a traditional perjury offense under federal law. *See id.* at 279.

To be sure, California HSC § 44059 provides that "[t]he willful making of any false statement or entry with regard to a material matter in any oath, affidavit, certificate of compliance or noncompliance, or application form which is required by this chapter...constitutes perjury and is punishable as provided in the Penal Code." Cal. Health & Safety Code § 44059. One of the two alternative provisions of the federal perjury statute, in turn, provides that "whoever...in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section

1746 of title 28, United States Code,[9] willfully subscribes as true any material matter which he does not believe to be true...is guilty of perjury...." 18 U.S.C. § 1621(2). Upon careful review, these two statutes — California HSC § 44059 and 18 U.S.C. § 1621(2) — are essentially identical in substance, in that they both criminalize the willful making of a false statement with respect to a material matter made under the penalty of perjury. Both statutes likewise criminalize conduct constituting perjury in the ordinary sense of the term, namely willfully making material false statements under oath or under the penalty of perjury. *See Amoco Production Co. v. Southern Ute Tribe*, 526 U.S. 865, 873 (1999) (recognizing that statutory terms must be understood in their "ordinary and popular sense"); *see also* Black's Law Dictionary 1139 (6th ed. 1990) (defining "perjury" as "the willful assertion as to a matter of fact...either upon oath or in any form allowed by law to be substituted by an oath, such assertion being material"). Thus, given the essential congruence of elements between the California statute at issue and the federal perjury statute, it is clear that Mobin's state conviction meets the definition of aggravated felony under § 1101(a)(43) as an "offense relating to...perjury," thus rendering him ineligible for naturalization. 8 U.S.C. § 1101(a)(43)(S).[10]

---

[9] Section 1746 provides that written, unsworn declarations, certificates, verifications, or statements may be charged with perjury under 18 U.S.C. § 1621 just as if the statements were made under oath provided the certificate contains the statement "under the penalty of perjury." 28 U.S.C. § 1746. Despite Mobin's argument to the contrary, there is no reason why a statement made in an <u>application</u> signed under penalty of perjury, as involved in Mobin's state conviction, would be treated any differently than a sworn "declaration, certificate or verification," as specified in the federal perjury statute. Rather, any material false statement made willfully under penalty of perjury — whether in an application or otherwise — would fall within the purview of § 1621(2). Indeed, what is significant is the fact that a statement is made under penalty of perjury, not the particular context or setting in which that statement is made.

[10] Although not necessary to the result reached here, it should nonetheless be noted that BCIS was not bound to follow the BIA's conclusion that Mobin's state perjury conviction did not

Nor are any of Mobin's arguments to the contrary persuasive in this instance. For example, the fact that the federal perjury statute contains an additional provision relating specifically to false statements made under oath in the course of testimony, declarations, depositions or certifications "before a competent tribunal, officer, or person" does not alter the result reached here. 18 U.S.C. § 1621(1). Rather, sections (1) and (2) of the federal perjury statute are clearly set forth in the disjunctive, with each constituting a separate and distinct crime. In other words, while an under oath statement is required to have been made before a competent "tribunal, officer or person" in order to establish a conviction under § 1621(1), neither an under oath statement nor a judicial proceeding is required for a perjury conviction under section (2). Indeed, § 1621(2) does not, as Mobin argues, require a false statement signed under penalty of perjury to have been "provided in relation to a judicial or administrative tribunal." Pl. Reply (Doc. 25) at 8. Rather, all that is necessary to establish a conviction under § 1621(2) is (i) a false statement, (ii) with respect to a material matter, (iii) made willfully, and (iv) under the penalty of perjury. *See* 18 U.S.C. § 1621(2). This is precisely the conduct criminalized in California HSC § 44059. Because of this, Mobin's argument that the state statute does not share "common material elements" with the federal perjury statute is unpersuasive. *In re Martinez-Recinos*, 23 I. & N. Dec. 175, 177 (BIA 2001) (stating that "we must

---

constitute an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43), as Mobin contends. Indeed, § 1429 — the statute governing BCIS's review of Mobin's naturalization application — expressly provides that "the findings of the Attorney General in terminating removal proceedings...*shall not be deemed binding in any way* upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization...." 8 U.S.C. § 1429 (emphasis added); *see also Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 933 (9th Cir. 2007) (recognizing that "neither the Board nor the Immigration Judge have jurisdiction to determine an alien's eligibility for naturalization") (quoting *In re Acosta Hidalgo*, 24 I. & N. Dec. 103 (BIA 2007)). Moreover, § 1427(d) expressly directs that "[n]o finding by the Attorney General that the applicant is not deportable shall be accepted as conclusive evidence of good moral character." 8 U.S.C. § 1427(d).

11

examine the California statute under which the respondent was convicted and the federal statute defining perjury to determine whether the state law shares common material elements with the federal law") (citations omitted).[11]

Mobin also argues that the BIA's decision is controlling given the provision in 8 U.S.C. § 1103(a)(1) that affords controlling weight to "the determination and ruling by the Attorney General with respect to all questions of law." This argument, like the first, is unpersuasive. Simply put, § 1103(a)(1) has no application where, as here, a *de novo* judicial review is required pursuant to 8 U.S.C. § 1421(c). Indeed, § 1421(c) specifically states that "the court shall make *its own* findings of fact and conclusions of law" in conducting this statutory *de novo* review. 8 U.S.C. § 1421(c) (emphasis added).[12] It is also important to note that the Attorney General did not declare a precedential legal rule in the context of Mobin's removal proceedings, as Mobin contends. Rather, the BIA — a delegate of the Attorney General — merely reached an adjudicatory decision in those proceedings based on its interpretation and application of certain facts to a statutory definition. A

---

[11] The BIA's similar conclusion that California HSC § 44059 does not share material elements in common with the federal perjury statute is equally unpersuasive and, in any event, that conclusion is not entitled to *Chevron* deference in this instance given the *de novo* review standard required by statute. *See* 8 U.S.C. § 1421(c).

[12] Section § 1103(a)(1) likewise did not bind BCIS to follow the BIA's decision given that a more specific statute — 8 U.S.C. § 1429 — expressly directs that "the findings of the Attorney General in terminating removal proceedings...*shall not be deemed binding in any way* upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization." 8 U.S.C. § 1429. Nor, as Mobin suggests, did the doctrine of *res judicata* prevent BCIS from reaching a conclusion different from that of the BIA, as giving *res judicata* effect to the BIA's ruling would essentially contravene the clear intent of Congress in enacting § 1429. *See* 8 U.S.C. § 1429; *see also Astoria Federal Sav. and Loan Ass'n Solimino*, 501 U.S. 104, 108 (1991) (recognizing that "where a common-law principle is well established, as are the rules of preclusion...the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident'") (citations omitted).

predicate legal conclusion made by the BIA in removal proceedings is not binding on the Attorney General in naturalization proceedings; nor is it binding here given the applicable *de novo* review standard. To hold otherwise — namely to bind the Attorney General in naturalization proceedings to conclusions of law made by the BIA in removal proceedings — is to ignore the fundamental and essential difference between removal and naturalization. Congress wisely recognized this difference by directing that district court review of naturalization petitions proceed *de novo* and by making clear in § 1429 that "the findings of the Attorney General in terminating removal proceedings...*shall not be deemed binding in any way* upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization." 8 U.S.C. § 1429 (emphasis added). Indeed, it is clear that the Attorney General does not consider himself bound by any legal predicate to the BIA's adjudicatory decision as he appears in this very action, by counsel, and takes the position that the BIA's conclusion that Mobin's state conviction was not an "aggravated felony" within the context of § 1101(a)(43) was erroneous.

## V.

In sum, then, Mobin's California conviction for making false statements under penalty of perjury is clearly one "relating to" perjury sufficient to fall within the meaning of § 1101(a)(43)(S). Moreover, the requisite elements of the California statute at issue and the pertinent section of the federal perjury statute are essentially the same, thus satisfying the "categorical approach" announced in *Taylor*, 495 U.S. at 598-600. For these reasons, it is clear that Mobin's state conviction meets the definition of "aggravated felony" under 8 U.S.C. §§ 1101(a)(43) and (f)(8) and renders Mobin ineligible for naturalization for lack of "good moral character" pursuant to 8 U.S.C. § 1427(a)(3).

An appropriate Order will issue.

Alexandria, VA
February 12, 2009

_____/s/_____
T. S. Ellis, III
United States District Judge